UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JABREE A. ELLIS,<br>    Plaintiff<br><br>v.<br><br>THE BROOKE CHARTER SCHOOLS,<br>    Defendant | Civil Action No. |

## PLAINTIFF'S COMPLAINT AND JURY CLAIM

## PARTIES

1. The Plaintiff, Jabree A. Ellis, is an individual who resides in Brockton, Plymouth County, in the Commonwealth of Massachusetts.

2. The Defendant, the Brooke Charter Schools, is a Massachusetts nonprofit charter school organization that operates publicly funded charter schools in Boston and Chelsea in the Commonwealth of Massachusetts. It is governed by its Board of Trustees and regulated by the Massachusetts Department of Elementary and Secondary Education. As a publicly funded charter school carrying out a state-delegated public educational function, Brooke Charter Schools acts under color of state law for purposes of 42 U.S.C. §1983. The Defendant maintains a usual place of business in Boston, Suffolk County, Massachusetts.

## JURISDICTION

3. This action raises federal questions under Title VII of the Civil Rights Act of 1964, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983 *et seq.*, which provides a cause of action against government officials who, under color of law, deprive individuals of constitutional rights.

4. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§1331 and 1343.

5. This Court has supplemental jurisdiction over the Plaintiff's related claims under the Massachusetts Constitution, Massachusetts General Laws Chapter 151B, and the Massachusetts Civil Rights Act, pursuant to 28 U.S.C. § 1367, as all claims arise from the same nucleus of operative facts.

6. The Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right-to-Sue from the U.S. Department of Justice on September 5, 2025. This civil action is filed within 90 days of the Plaintiff's receipt of that Notice and is therefore timely.

7. This Court has the authority to award the requested relief pursuant to 28 U.S.C. §1343, Fed. R. Civ. P. 57 and 65, and costs and attorneys' fees under 42 U.S.C. §1988.

8. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §1391(b) because the Defendant operates schools within this District and all material events described herein occurred in this District.

**FACTUAL BACKGROUND**

9. Brooke Charter Schools is a network of public charter schools located in Boston and Chelsea, Massachusetts. At all relevant times, it was publicly funded and regulated by the Massachusetts Department of Elementary and Secondary Education, and not part of the Boston Public Schools nor under the supervision or control of the Boston School Committee.

10. From July of 2019 to August of 2024, the Plaintiff was employed as a high school Computer Science teacher at Brooke High School, part of the Brooke Charter Schools network.

11. Throughout her tenure, the Plaintiff served her students with exceptional effort and care. She became the longest tenured computer science teacher in the school's history and developed a copyrighted educational application to support student learning. She routinely spent ten to twelve hours per day in the school building, taught before, during and after the COVID-19 pandemic, and rarely took time off. She sponsored the school's Bible Club for three years. No student ever lodged a complaint against her, and she maintained an exemplary record of service.

12. In mid-July of 2024, a former student – not enrolled at the school at the time – emailed the Plaintiff requesting a letter of recommendation. The Plaintiff was under no obligation to write the letter. The Plaintiff responded via email that she would write the recommendation but, because she could not lie in accordance with her belief in Christ and His teachings, could not refer to the former student using a preferred name or pronouns that did not align with the student's biological sex.

13. The former student asked why. On July 17, the Plaintiff replied by explaining her sincerely held beliefs. The former student never responded, and no letter of recommendation was written.

14. On August 1, 2024, the Plaintiff reported for teacher training. At that time, the school's principal, Lauren Horne, and Chief People Officer, Suki Cintron, informed the Plaintiff that the above matter had been reported to the school.

15. The Plaintiff explained that her sincerely held religious beliefs prevented her from calling students by pronouns that differed from their biological sex. She further explained that she had respectfully interacted with transgender and gender-nonconforming students in the past without any complaints.

16. On August 2, at Horne's request, the Plaintiff met with her again. Horne informed the Plaintiff that her employment was in jeopardy unless the Plaintiff complied with the demand to use preferred names and pronouns. Horne explained that this demand came from "the law."

17. On August 5, the Plaintiff met with Horne and Citron again. The Plaintiff explained that the former student had a parent employed at the school, that she had never been obligated to write a recommendation, that no student had ever complained about her, and that she had successfully navigated respectful conversations with students who used different pronouns. The administrators stated that retaining her would make the school "liable," despite her spotless record. The Plaintiff reiterated that her religious beliefs were the bases of her position.

18. Brooke Charter Schools, through its agents, Horne and Citron, terminated the Plaintiff's employment because she would not agree to use preferred names and pronouns. She received a termination letter.

19. Had she not been terminated, the Plaintiff intended to continue her career at the Brooke Charter Schools.

20. At all relevant times, Lauren Horne and Suki Cintron were acting within the scope of their employment and as the agents of the Defendant.

**COUNT I: Violation of Title VII of the Civil Rights Act of 1964**

21. The Plaintiff realleges and incorporates the allegations set forth above as if fully set forth herein.

22. Title VII of the Civil Rights Act of 1964 is a federal anti-discrimination law that prohibits employment discrimination based on race, religion, sex, and national origin.

23. According to *Groff v. Dejoy*, 600 U.S. 447 (2023), Title VII requires employers to reasonably accommodate an employee's religious practices unless "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of [the employer's] particular business." *Groff, 600 U.S.* at 470.

24. The Plaintiff had and has a sincerely held religious belief that God makes no mistakes when it comes to sex and gender and that calling transgender students by a name or pronouns at odds with their biological sex would cause the Plaintiff to affirm that God made a mistake in creating a transgender person as a male or a female. In the Plaintiff's religious view, affirming a transgender person's identity through the use of preferred names and pronouns would be speaking a falsehood and would violate her religious beliefs.

25. The Plaintiff's sincerely held religious beliefs and practices conflicted with the Defendant's policies related to name and pronoun usage for transgender students.

26. The Defendant could have reasonably accommodated the Plaintiff's sincerely held religious beliefs without "result[ing] in substantial increased costs in relation to the conduct of its particular business," but it made no attempt to do so.

27. One accommodation, among others, that the Defendant could have provided the Plaintiff, but did not, was to allow the Plaintiff to refer to students by last name.

28. The Defendant's action in terminating the Plaintiff's employment because of her religion violated the Plaintiff's rights under Title VII of the Civil Rights Act of 1964.

29. As a result thereof, the Plaintiff suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities, and other damages including emotional distress and mental suffering.

30. Pursuant to 42 U.S. Code §1988, the court in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs in an action brought under 42 U.S. Code §1983.

### COUNT II: Violation of the Free Exercise Clause of the First Amendment to the United States Constitution

31. The Plaintiff realleges and incorporates the allegations set forth above as if fully set forth herein.

32. The First Amendment to the United States Constitution provides, in part, the "Congress shall make no law respecting an establishment of religion, or prohibiting the free Exercise thereof …" U.S. Const. amend. I.

33. The Free Exercise Clause of the First Amendment is applicable to the States under the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV.

34. It is well settled that the Free Exercise of the First Amendment "protects not only the right to freedom in what one believes, but extends (with limitations) to acting on those beliefs." *Employment Div., Dep't of Human Res. of Oregon v. Smith,* 494 U.S. 872, 877 (1990).

35. Policies that impose a burden on religion are subject to strict scrutiny under the Free Exercise Clause of the First Amendment if they are not neutral and generally applicable. *Fulton v. City of*

*Philadelphia, Pennsylvania*, 593 U.S. 522, 533 (2021) *(*citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520, 531-32 (1993)).

36. "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton*, 593 U.S. at 533 (citing *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 638 (2018), *Lukumi,* 508 U.S. at 533).

37. And a policy "is not generally applicable if it " 'invite[s]' the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 593 U.S. at 533 (quoting *Smith*, 494 U.S. at 884 (quoted source omitted)).

38. The Defendant's requirement that its teachers refer to students by preferred names and pronouns that do not align with the students' biological sex is not neutral and generally applicable, and is an unconstitutional burden on the Plaintiff's Free Exercise rights.

39. By requiring the Plaintiff to act in a manner inconsistent with her sincerely held religious beliefs, and terminating her employment because her sincerely held religious beliefs conflicted with the Defendant's policy, the Defendant violated the Plaintiff's First Amendment right to the Free Exercise of her religion.

40. As a result thereof, the Plaintiff suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities, and other damages including emotional distress and mental suffering.

**COUNT III: Violation of the Freedom of Speech Clause of the First Amendment to the United States Constitution**

41. The Plaintiff realleges and incorporates the allegations set forth above as if fully set forth herein.

42. The First Amendment to the United States Constitution provides, in part, the "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I.

43. The Defendant, by its agents, in attempting to coerce the Plaintiff's speech under the threat of the termination of her employment, violated the Plaintiff's freedom of speech rights under the First Amendment to the United States Constitution.

44. As a result thereof, the Plaintiff suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities, and other damages including emotional distress and mental suffering.

**COUNT IV: Violation of the Freedom of Religion Clause of the Declaration of Rights of the Massachusetts Constitution**

45. The Plaintiff realleges and incorporates the allegations set forth above as if fully set forth herein.

46. The Freedom of Religion clause, Article II of the Declaration of Rights of the Massachusetts Constitution, states: "…no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship."

47. The Defendant's action in terminating the Plaintiff's employment because of her religion violated the Plaintiff's rights under the Freedom of Religion clause of the Declaration of Rights of the Massachusetts Constitution.

48. As a result thereof, the Plaintiff suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities, and other damages including emotional distress and mental suffering.

**COUNT V: Violation of Massachusetts General Law Chapter 151B**

49. The Plaintiff realleges and incorporates the allegations set forth above as if fully set forth herein.

50. Massachusetts General Laws Chapter 151B, § 4, Subsection 1, provides that it is an unlawful practice for an employer, by himself or his agent, because of the religious creed of an individual, to discharge from employment such individual or to discriminate against such individual in the terms, conditions, or privileges of employment.

51. Massachusetts General Laws Chapter 151B, § 4, Subsection 1A, provides that it is an unlawful discriminatory practice for an employer to impose upon an individual as a condition of retaining employment any terms or conditions, compliance with which would require such individual to violate, or forego the practice of, her creed or religion as required by that creed or religion.

52. The Plaintiff has timely satisfied all the prerequisites to suit under Massachusetts General Laws Chapter 151B.

53. The Defendant employs six or more persons and is an employer as defined by Massachusetts General Laws Chapter 151B, § 1.

54. The Defendant could have reasonably accommodated the Plaintiff's sincerely held religious beliefs without causing undue hardship in the conduct of the school.

55. The Defendant, in violation of Massachusetts General Laws Chapter 151B, § 4, Subsection 1, unlawfully terminated the Plaintiff from her employment because of her religious creed.

56. The Defendant, in violation of Massachusetts General Laws Chapter 151B, § 4, Subsection 1A, unlawfully imposed upon the Plaintiff, as a condition of retaining employment, terms or conditions, compliance with which would require the Plaintiff to violate the practice of her religion.

57. As a result thereof, the Plaintiff suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities, and other damages including emotional distress and mental suffering.

58. Pursuant to General Laws Chapter 151B, § 9, if the court finds for the Plaintiff, it may award her actual and punitive damages.

59. And, pursuant to that same statute, if the court finds for the Plaintiff, it shall, in addition to any other relief and irrespective of the amount in controversy, award the plaintiff reasonable attorney's fees and costs unless special circumstances would render such an award unjust.

**COUNT VI: Violation of the Massachusetts Civil Rights Act**

60. The Plaintiff realleges and incorporates the allegations set forth above as if fully set forth herein.

61. Pursuant to Massachusetts General Laws Chapter 12, §§11H and I, the Massachusetts Civil Rights Act, any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with or attempted to be interfered with, by the use of threats, intimidation or coercion, can institute a civil action seeking the award of compensatory money damages.

62. By its agents threatening to terminate the Plaintiff's employment unless she complied with their demands for her to use students' preferred names and pronouns, the Defendant violated the Plaintiff's rights under both the constitution and laws of the United States, and the laws and constitution of the Commonwealth of Massachusetts.

63. Accordingly, the Plaintiff has a right to file this action against the Defendant pursuant to General Laws Chapter 12, §§11H and I, the Massachusetts Civil Rights Act.

64. As a result of the Defendant's violations of the Plaintiff's rights under the constitution and laws of the United States, and of the Plaintiff's rights under the laws and constitution of the Commonwealth of Massachusetts, the Plaintiff suffered and continues to suffer loss of income, loss of benefits, loss of personal and professional reputation, loss of professional opportunities, and other damages including emotional distress and mental suffering.

65. Pursuant to the Massachusetts Civil Rights Act, any aggrieved person who prevails in an action authorized by § 11I of the Act shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court.

## **REQUEST FOR RELIEF**

For these reasons, the Plaintiff therefore requests the following relief:

A. A declaration that the Defendant violated Ms. Ellis's Title VII rights.

B. A declaration that the Defendant violated Ms. Ellis's freedom of religion rights under the First Amendment to the United States Constitution.

C. A declaration that the Defendant violated Ms. Ellis's freedom of speech rights under the First Amendment to the United States Constitution.

D. A declaration that the Defendant violated Ms. Ellis's freedom of religion rights under the Massachusetts Constitution.

E. A declaration that the Defendant violated Ms. Ellis's rights under Massachusetts General Laws Chapter 151B.

F. A declaration that the Defendant has a right to bring this action under the Massachusetts Civil Rights Act.

G. A permanent injunction ordering reinstatement of Ms. Ellis to her employment at the Brooke Charter Schools.

H. Compensatory damages including, but not limited to, damages for lost income and benefits, mental and emotional distress, loss of reputation and inconvenience.

I. Costs and attorney's fees under 42 U.S.C. §1988.

J. Costs, attorney's fees and compensatory and punitive damages under Massachusetts General Laws Chapter 151B.

K. Damages, costs and attorney's fees under the Massachusetts Civil Rights Act.

L. Interest on any monetary award.

M. Any such other relief as this Court deems appropriate.

## JURY DEMAND

The Plaintiff demands trial by jury on all issues so triable.

The Plaintiff, Jabree A. Ellis,
By her Attorney

/s/ Thomas M. Harvey
Thomas M. Harvey
Law Office of Thomas M. Harvey
22 Mill Street, Suite 408
Arlington, MA 02476
Tel: 617-710-3616; Fax 781-643-1126
tharveyesq@aol.com